UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JOHANNAH SPEED, ) <br> Personal Representative of the ) <br> Estate of Vinal L. Speed, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> GIDDINGS & LEWIS, LLC, ) <br> et al., ) <br> ) <br> Defendants ) | Civil No. 05-149-B-C |

### *RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT*

This is a removed action brought by Johannah Speed as the personal representative of the Estate of Vinal Speed, Johannah Speed's husband.[1] Vinal Speed died from injuries sustained when he was working on a horizontal boring mill at General Electric Power Systems in Bangor, Maine. One of the defendants, General Electric Company, moves for summary judgment. (Docket No. 35.) I recommend that the Court grant General Electric Company's motion.

### *Discussion*

General Electric Company argues two grounds for granting it summary judgment. First, it contends that it is entitled to summary judgment because Speed's claims are governed by Maine's Workers' Compensation Act and, because it has secured workers compensation payment with respect to Vinal Speed's death, it is exempt from this civil action. See 39-A M.R.S.A. § 104. Second, General Electric Company contends Speed

---

[1] When I use "Speed" in this decision without an accompanying first name I am referring to Johannah Speed in her role as plaintiff.

does not have any expert testimony to support her claim the General Electric Company was at fault for the accident because her own expert testified in his deposition that it was his opinion there is no basis for finding that General Electric Company was at fault.

Summary judgment is appropriate,

> only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir.2001) (quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir.1995)). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Nicolo v. Philip Morris, Inc., 201 F.3d 29, 33 (1st Cir.2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir.2001) (citation and internal punctuation omitted).

Verizon New England Inc. v. Maine Public Utilities Comm'n, __ F. Supp. 2d __, __, 2006 WL 2007655, *2 (D.Me.,2006)

### *Facts Relating to Workers' Compensation Immunity*

There is no dispute that Vinal Speed died on June 21, 2003, as a result of injuries sustained on June 16, 2003, while working on a horizontal boring mill referred to as the

"TB-70" machine at General Electric Power Systems in Bangor, Maine. (Def.'s SMF ¶ 2; Pl.'s Resp. SMF ¶ 2.)

According to General Electric Company, Vinal Speed, was an employee of General Electric Company on June 16, 2003, working at General Electric Company's Bangor plant, General Electric Power Systems. (Def.'s SMF ¶¶ 1,2; Cox Aff. ¶¶ 3,4,5; Compl. ¶¶ 15-18.) General Electric Company maintains that it secured payment of workers' compensation benefits for all of its employees, including those employed at General Electric Power Systems, through a single workers' compensation insurance policy with Electric Insurance. (Def.'s DMF ¶ 3; Kiely Aff. ¶ 3.)

Johannah Speed responds that General Electric Company relies on the affidavit of David Cox in support of its assertion that Speed was an employee of General Electric Company and that his affidavit is not consistent with General Electric Company's Rule 26(a)(1) disclosure which identified Cox as the plant manager for "General Electric Power Systems." (Pl.'s Resp. SMF ¶¶ 1,2; Attach. 2 at 1-2.) Speed also points out that General Electric Company admitted in Paragraph 13 of its answer that it is a foreign company with a principal place located at One River Road, PO Box 2216, Schenectady, New York. (Pl.'s Resp. SMF ¶¶ 1,2, 3.) Speed contends that General Electric Company has offered no admissible record evidence that General Electric Company is the same corporate entity as General Electric Power Systems. (Pl.'s Resp. SMF ¶ 1,2,3.)[2]

---

[2] With respect to the relationship of General Electric Company to General Electric Power Systems, in its response to Speed's additional facts General Electric Company sets forth the following:
> GE Power Systems is not a legal entity. GE Power Systems is a division of GE. All employees at GE Power Systems are GE employees and Vinal Speed was a GE employee. (Second Affidavit of David L. Cox, Jr. in Support of Defendant GE's Motion for Summary Judgment, ¶¶ 3-5; Affidavit of Christine F. Bean in Support of Defendant GE's Motion for Summary Judgment, ¶¶ 3-9.)

(Resp. Pl.'s SAMF at 1.) This is not a response to Speed's additional statements of facts and is not a permissible summary judgment tactic as General Electric Company had every opportunity to put this

3

There is no dispute that the workers' compensation insurance policy in effect on the date of Vinal Speed's injury on June 16, 2003, was Policy No. WC 03-01, notice of which was filed with the Maine Workers' Compensation Board. (Def.'s SMF ¶ 4; Pl.'s Resp. SMF ¶ 4.) Workers' compensation benefit payments were made for the injuries sustained by Vinal Speed and workers' compensation death benefits were paid after Vinal Speed's death. (Def.'s SMF ¶ 5; Pl.'s Resp. SMF ¶ 5.)

In responding to General Electric Company's argument on this score, first Speed asserts that there is no common law right to recovery for wrongful death in Maine; wrongful death being a statutorily created cause of action. (Mem. Opp'n Summ. J. at 3-4.) As General Electric Company points out, Speed is flat out wrong. See Beverage v. Cumberland Farms Northern, Inc., 502 A.2d 486, 489 (Me. 1985) ("The exclusivity sections of the Workers' Compensation Act mean exactly what they say. If an employer subject to the Act secures the payment of workers' compensation as it is required to do, any of its employees (as well as the representative of any employee) is barred from suing that employer for damages for work-related injuries, whether at common law or under the Employer's Liability Law, the Maine Tort Claim Act, the wrongful death statute. The employee must look to the workers' compensation system for his exclusive remedy."); accord Fanion v. McNeal, 577 A.2d 2, 4 (Me. 1990) (wrongful death action).

Second, Speed argues that General Electric Company and General Electric Power Systems are separate legal entities and that she can reach General Electric Company under the "dual capacity" or "dual persona" theory articulated by the Maine Law Court in Quinn v. DiPietro, 642 A.2d 1335 (Me. 1994). I agree with General Electric Company

---

information in its statement of material fact. However, as a practical matter, it does illustrate that the dispute concerning the relative identities of General Electric Company and General Electric Power Systems is something shy of genuine.

4

that Speed did not plead this theory in her complaint and, whether or not that is a fish-or-cut-bait pleading requirement, see Li v. C.N. Brown Co., 645 A.2d 606, 609 (Me.1994), she has not carried her burden at the summary judgment stage. At most her factual development on this score invites unfettered speculation. Certainly her disparagement of the General Electric Company's reliance on affidavits by individuals that would have first had knowledge of the issue as "self serving" is not sufficient to survive summary judgment[3]; Speed would need competent record evidence of the legal status of these two entities to generate a genuine dispute of this material fact.

### *Conclusion*

For these reasons I recommend that the Court grant General Electric Company's motion for summary judgment (Docket No. 35) on the grounds that it is entitled to immunity from suit under Maine's Workers' Compensation Act.[4]

---

[3]  I do not read General Electric Company's Rule 26(a)(1) disclosure identifying Cox as the plant manager for General Electric Power Systems as inconsistent with General Electric Company's representations of the relative legal status of the two entities.

[4]  Should the Court disagree with this conclusion it would need to address General Electric Company's second summary judgment argument. The facts material to that concern are as follows.

Speed has designated only one liability expert, Ralph L. Barnett and has not designated any other experts. (Def.'s SMF ¶ 6.)[4]  There is no dispute that Professor Barnett is a professor of mechanical and aerospace engineering at Illinois Institute of Technology. (Def.'s SMF ¶ 7; Pl.'s Resp. SMF ¶ 7.)

General Electric Company believes that Barnett was designated to render an opinion about the technical aspects of the horizontal boring mill in issue in this case. This machine is referred to by the parties as the "TB-70" machine. (Def.'s SMF ¶ 8; Barnett Report (Attach 4); Barnett Dep. at 8-9.) Speed offers a qualification of this paragraph describing it as an "ambiguous allegation." (Pl.'s Resp. SMF ¶ 8.) Speed contends that the report makes clear that Barnett was designated to render opinions on several issues including a safety analysis of the subject "TB-70" machine and safety logic protocol. (Id.)

According to General Electric Company, Barnett testified in his deposition that he did not place any fault for the accident on General Electric Company. (Def.'s SMF ¶ 9; Barnett Dep. at 19-25.)

Speed retorts that Barnett clarified early on in his deposition that the opinions he was offering were independent of the General Electric Company control systems. (Pl.'s SAMF ¶ 9(A); Barnett Dep. at 56.) Furthermore, at the time of his deposition, Barnett had not seen the original General Electric Company control panel and had not seen any documents, including the manual, related to the original General Electric Company control panel. (Pl.'s SAMF ¶ 9(B); Barnett Dep. at 56.) And, Speed points out, Barnett stated that if he got more information, he might have additional opinions about the General Electric Company control package. (Pl.'s SAMF ¶ 9(C); Barnett Dep. at 56.)

In its response to these additional statements General Electric Company alleges that Barnett had inspected the control panel on the machine prior to his deposition, he was provided manuals in discovery, and his opinion took into account the control panel on the machine, including changes in the control panel.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

July 26, 2006

---

(Def.'s Resp. Pl.'s SAMF ¶ 9(A),(B),(C); Barnett Dep. at 16- 18; Badger Aff. ¶ 3.) Barnett testified that the control panel had no bearing on his opinion. (Def.'s Resp. Pl.'s SAMF ¶ 9(A),(B),(C); Barnett Dep. at 55-56). Barnett has never corrected or supplemented this testimony. (Def.'s Resp. Pl.'s SAMF ¶ 9(A),(B),(C); Badger Aff. ¶ 4.)

There is no genuine dispute that Speed served Defendants General Electric Company and Giddings & Lewis, respectively, with interrogatories, dated March 20, 2006, and requests to produce documents, dated March 20, 2006. (Pl.'s SAMF ¶ 9(D); Def.'s Resp. Pl.'s SAMF ¶ 9(D).) Both sets of discovery documents included detailed questions about the subject TB-70 machine that would assist Professor Barnett in further developing his opinions (Pl.'s SAMF ¶ 9(E)), although General Electric Company complains that Speed has failed to provide any record citation supporting how those requests would have assisted Barnett (Def.'s Resp. Pl.'s SAMF ¶ 9(E)). General Electric Company's objections and responses were received on April 7, 2006, well after Barnett's deposition had been taken. (Pl.'s SAMF ¶ 9(F); Def.'s Resp. Pl.'s SAMF ¶ 9(F).) Speed is still in the process of attempting to obtain complete discovery responses from Defendant Giddings & Lewis. (Pl.'s SAMF ¶ 9(G); Def.'s Resp. Pl.'s SAMF ¶ 9(G).)

Speed responds to General Electric Company's position on this point by arguing that the Court should stay its hand pursuant to Federal Rule of Civil Procedure 56(f).