UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JOHANNA SPEED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil No. 05-149-B-MJK |
| GIDDINGS & LEWIS MACHINE ) | |
| TOOLS, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____) | |
| ) | |
| GIDDINGS & LEWIS MACHINE ) | |
| TOOLS, LLC, ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CNC ENGINEERING, INC. and ) | |
| PHOENIX, INC., ) | |
| ) | |
| Third-Party Defendants. ) | |

**ORDER ON MOTIONS IN LIMINE**

With the four pending motions (Doc. Nos. 125, 128, 129 and 130), the defendant/third-party plaintiff and the third-party defendants ask the Court to preclude the plaintiff's products liability expert from offering his opinions at trial on the grounds that (1) the expert described as speculative an underlying factual premise that the plaintiff needs to establish in order to gain the benefit of the expert's opinion and (2) certain refinements to the expert's opinion were made in the context of evidentiary disclosures and third-party proceedings that were not disclosed in the plaintiff's expert witness designation. I deny the motions.

**Background**

The plaintiff represents the Estate of Vinal Speed. Mr. Speed died of injuries he received while working a horizontal boring mill for his employer, General Electric. The defendant, Giddings & Lewis Machine Tools, designed the mill, but the third-party defendants installed and/or made certain modifications to the mill's control panel. In February 2006 the plaintiff timely designated Professor Ralph L. Barnett to provide expert opinion testimony to the effect that the mill is unreasonably dangerous to a worker engaged in a common operation known as a manual tool change. The movants do not contend with the instant motions that Professor Barnett's opinion is inadmissible insofar as he opines that the mill is unreasonably dangerous in respect to this common operation. Rather, they contend that the opinion's relevance cannot be established because no one knows whether Mr. Speed was performing the manual tool change operation when he suffered his injury.

About a month after the designation, Giddings & Lewis filed a motion for leave to join the third-party defendants on the ground that it "appeared" that the plaintiff's theory as to defect related to the control panel for the mill, and the third-party defendants had installed, designed or modified the panel, which was not an original component of the mill that Giddings & Lewis provided to General Electric. That motion was allowed and the third-party defendants' answers were both filed by the end of May 2006. On June 7, General Electric filed a motion for summary judgment, well ahead of the deadline for dispositive motions. That motion did not implicate Professor Barnett's opinion. It turned, instead, on the application of Maine's workers' compensation law, which immunizes employers from actions for damages. On August 21, 2006, while General Electric's summary judgment motion was before the Court, the Court amended the scheduling order on a motion by third-party defendant Phoenix, Inc., so that the discovery

deadline was pushed back to December 29, 2006, and the dispositive motions deadline to January 20, 2007.  Despite this leeway, Giddings & Lewis filed a summary judgment motion in October 2006, asserting as a material fact that Mr. Speed was engaged in the manual tool change operation when he was injured, but arguing that it was entitled to judgment as a matter of law because the defect in question concerned the mill's control panel, which Giddings & Lewis did not design or install.  In opposition to the motion, the plaintiff supplemented Professor Barnett's original report to address Giddings & Lewis's arguments and to clarify that a design defect in the original machine was still a material defect that gave rise to an unreasonably dangerous condition for Mr. Speed, despite the interplay of certain control panel features.  Specifically, Professor Barnett clarified his opinion by asserting that the mills should have been designed to lock out any possible movement of the mill during a manual tool change operation, similar to the way it is designed to lock during an automatic tool change to prevent damage to the mill.  In reply, Giddings & Lewis raised one of the arguments it raises now, arguing that the modified opinion was out of order because its introduction in the summary judgment proceeding was not preceded by a supplemental expert designation.  The Court denied the summary judgment motion based on its conclusion that there is a genuine, *material* issue as to the existence of an unreasonably dangerous condition in the mill prior to the control panel work performed by the third-party defendants.  (Doc. No. 83.)

When the motions deadline rolled around in January 2007, Giddings & Lewis filed a motion to exclude testimony from Professor Barnett, arguing the Daubert and Rule of Evidence 702 factors.  Giddings & Lewis objected to the testimony on the ground that Professor Barnett had not properly analyzed the mill as it existed in its original condition and on the ground that the relevance of Professor Barnett's testimony could not be established because nobody knows

what operation Mr. Speed was performing when he was fatally injured.  (Doc. No. 85.)  The Court denied this motion as well, concluding that a sufficient factual predicate existed in the record to make Professor Barnett's opinion relevant and that the opinion went beyond the control panel controversy to identify a defect in the mill's basic "set up and functioning."  (Doc. No. 100 at 5.)

Meanwhile, the third-party defendants moved for summary judgment on the third-party claims, focusing their factual presentation on the ambiguity over whether Mr. Speed was performing a manual tool change or not, and focusing their legal argument on the issue of proximate causation.  In addition, they argued that the third-party claims were not properly supported by expert testimony, because Giddings & Lewis had not designated its expert to opine concerning the third-party defendants' liability.  (Doc. Nos. 84, 88.)  In response, Giddings & Lewis essentially asserted that if the evidentiary record was good enough for the plaintiff's claims it was good enough for the third-party claims and that it could rely on Professor Barnett's revised opinion about the interrelationship between the preexisting defect in the mill and the third-party defendants' work on the control panel to prove the third-party defendants' contribution toward an unreasonably dangerous condition.  (Doc. No. 93.)  The Court denied both motions, concluding that genuine issues of material fact remained for trial.  (Doc. Nos. 101, 102.)

Months later, after consenting to let me preside over this case at trial, Giddings & Lewis and the third-party defendants have renewed their challenges to Professor Barnett's testimony, making the very same arguments they made previously, this time in the context of the instant pretrial motions *in limine*.  What has changed in the interim is that the third-party defendants had an opportunity to conduct a follow-up deposition of Professor Barnett in April 2007.  During that

deposition, they quite easily got Professor Barnett to testify, repeatedly, that, as far as he is concerned, it is entirely speculative whether Mr. Speed was actually performing a manual tool change when he was fatally injured.

## Discussion

Giddings & Lewis argues that it has been unfairly sandbagged by the evolution of Professor Barnett's expert opinion because of the plaintiff's failure to timely supplement her expert disclosure, or to have Professor Barnett comprehensively develop his opinion within the expert disclosure deadline of the scheduling order (February 28, 2006). I am not persuaded by this argument. The February 28, 2006, deadline fell before Giddings & Lewis's motion to join the third-party defendants. The nature of the case changed appreciably with the development of the third party action. I am not overly troubled that Professor Barnett's analysis evolved to account for the fact that different parties contributed to the overall design of the mill, particularly where his core opinion as to the "minimum safety logic protocol" (that it should permit an operator to disable all motion of the mill prior to performing a manual tool change) was always central to his opinion. It is an overly pedantic reading of the scheduling order to interpret it as precluding any expert opinion supplementation under Rule 26(e). Moreover, I am comfortable concluding that no unfair surprise results here because, consistent with the advisory notes of Rule 26, these developments have not prejudiced Giddings & Lewis's ability to prepare its expert or effective cross-examination in advance of trial. Whatever unfairness Giddings & Lewis perceived in relation to its summary judgment motion was already considered by the Court and likely arose on account of the fact that Giddings & Lewis filed its summary judgment motion more than 12 weeks ahead of the discovery deadline.

The third-party defendants have a slightly different Rule 26 objection. They complain that they have never received any formal expert designation that outlines the third-party products liability claims against them because Giddings & Lewis's expert designations are limited to rebutting the plaintiff's case. Although I understand that this omission is not in keeping with strict Rule 26 disclosure requirements, the third-party defendants have been informed by Giddings & Lewis that Giddings & Lewis is relying on Professor Barnett's supplemental opinion to support their third-party claims and the third-party defendants have been afforded the opportunity to review that opinion and to depose Professor Barnett in that regard so as to be prepared for trial. Notably, the third-party defendants have not suggested that the pretrial procedure followed in this case somehow deprived them of an opportunity to obtain or develop their own expert testimony.

As for the Daubert arguments presented by both Giddings & Lewis and the third-party defendants, Professor Barnett has been designated to provide an expert opinion on a defective condition in the mill that rendered it unreasonably hazardous to a worker engaged in a manual tool change operation. Professor Barnett has made it clear that he does not intend to opine that Mr. Speed was more likely than not engaged in this operation when he was fatally injured and that he, subjectively, believes that Mr. Speed was as likely to have been doing something other than a manual tool change when he was struck by the mill, i.e., something that would not have made his death turn on the existence of the particular defect Professor Barnett believes he has identified. Despite this conundrum, Professor Barnett is not a fact witness. He will only offer an opinion as to why the mill was unreasonably hazardous to a worker engaged in the manual tool change operation. Whether Mr. Speed was more likely than not engaged in that particular operation was previously addressed in the context of the defendant's summary judgment motion.

6

Indeed, although it did not thereby concede the factual dispute, the defendant itself stated in its previous Local Rule 56 summary judgment statement that Mr. Speed was engaged in this very operation when he died.  (Doc. No. 64 ¶¶ 9-10.)  The third-party defendants, on the other hand, raised the uncertainty of this fact in their summary judgment statement.  (Doc. No. 86 ¶¶ 10-12; Doc. No. 87.)  Either way one looks at it, this factual matter was necessarily passed on by the Court when it denied the summary judgment motions.  In my view, it would be unfair to throw out the plaintiff's case now based on the fact that her expert, during a supplemental deposition, expressed scientific skepticism about a "factual finding" that may or may not be drawn depending on the probative value of evidence *other than* Professor Barnett's opinion.  Whether Mr. Speed was engaged in the manual tool change or not is something I will have to determine based on the evidence presented to me in this jury-waived trial.  For present purposes, I conclude that, even though Professor Barnett believes Mr. Speed may just as likely have been engaged in some other activity when he suffered a fatal injury, his expert opinion as to the presence of a design defect is methodologically sound.  The motions to exclude that opinion on Daubert grounds are DENIED.

## Conclusion

The motions to exclude Professor Barnett's testimony (Doc. Nos. 125, 128, 129 and 130) are DENIED.

*So Ordered.*

August 16, 2007                    /s/ Margaret J. Kravchuk
                                   U.S. Magistrate Judge